# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BRUCE G. WHITLEY, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:04CV01035 |
| ) | |
| SCHNEIDER NATIONAL CARRIERS, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

**Sharp, Magistrate Judge**

This matter comes before the Court on the motion of Plaintiff Bruce G. Whitley, Jr. for an order determining the amount of a subrogation lien pursuant to section 97-10.2(j) of the North Carolina General Statutes. (Pleading No. 7.) Counsel for Plaintiff's employer, Epes Transportation Service, Inc. ("Epes"), and Epes' workers' compensation carrier, Protective Insurance Company ("Protective"), filed no responsive materials with the Court. However, Plaintiff and Protective were heard in oral argument in the matter on July 22, 2005. Plaintiff Whitley's motion is ready for a ruling.[1]

---

[1] The parties have consented in writing to the trial jurisdiction of the United States Magistrate Judge, and the case has been referred to the undersigned for resolution. *See* 28 U.S.C. § 636(c).

## Procedural History

On November 23, 2002, Plaintiff Whitley was injured when the Epes tractor-trailer in which he was sleeping was struck by a tractor-trailer operated by an employee of Defendant Schneider National Carriers, Inc. ("Schneider"), knocking Plaintiff from his sleeping berth onto the floor. As Plaintiff attempted to stand back up, the Schneider truck hit Plaintiff's truck again. (Pleading No. 10, Bruce G. Whitley, Jr. Aff. ¶¶ 4, 5.) Immediately following the collision, Plaintiff felt a sharp pain in his back. *Id.* ¶ 6. Plaintiff was seen by a doctor who started Plaintiff on a course of physical therapy. *Id.* ¶ 10. When physical therapy failed to alleviate Plaintiff's back pain, he was seen by Dr. James Applington. *Id.* ¶¶ 11, 12. Dr. Applington informed Plaintiff that he had a herniated disk and degenerative changes in his lumbar spine, and that Plaintiff would not improve without surgical intervention. *Id.* ¶¶ 12, 13.

Protective, as the workers' compensation carrier for Epes, had been paying Plaintiff two-thirds of his average weekly wage and his medical bills up to the point of Dr. Applington's recommendation. However, Protective refused to authorize the surgery recommended by Dr. Applington. *Id.* ¶ 14. Plaintiff was finally able to obtain the surgery in January 2004 in large part by financing the surgery through coverage under his wife's

health insurance company, CIGNA HealthCare ("CIGNA").[2] [3] *Id.* ¶ 18. Following the surgery, Plaintiff continued to have pain in his back and upper legs, numbness and difficulty standing. *Id.* ¶ 19. Plaintiff is currently undergoing pain management treatment. Protective has refused to pay for this treatment. *Id.* ¶ 26.[4]

On October 12, 2004, Plaintiff filed a lawsuit against Schneider in the Superior Court of Guilford County, North Carolina, alleging negligence and seeking compensatory damages for his back injuries.[5] On November 8, 2004, Defendant Schneider removed the case to this Court on grounds of diversity and filed its answer. During discovery, the parties attended a mediated settlement conference, and Plaintiff agreed to settle his claims against Schneider for $220,000.

Following this settlement, Protective asserted its right under section 97-10.2 of the North Carolina General Statutes to a subrogation lien to recover from Plaintiff's settlement with Schneider the amounts it has paid to Plaintiff in workers' compensation benefits.

---

[2] CIGNA has advised Plaintiff that they have a lien against his recovery in this action. *Id.* ¶ 25.

[3] The Court notes that Plaintiff's affidavit contains two different paragraphs numbered "25." In this citation, the Court is referring to the first such numbered paragraph. Citations to the second paragraph numbered "25" will be as follows: ¶ 25(2).

[4] The Court notes that Plaintiff's affidavit also contains two different paragraphs numbered "26." In this citation, the Court is referring to the first such numbered paragraph. Citations to the second paragraph numbered "26" will be as follows: ¶ 26(2).

[5] On October 21, 2004, Plaintiff filed an Amended Complaint, substituting Schneider National Carriers, Inc. for Schneider National, Inc. as the proper defendant in this case.

Protective and Plaintiff have been unable to agree on the amount Protective should recover and seek the Court's guidance in determining the proper amount.

## Discussion

Plaintiff Whitley requests the Court, in its discretion, to eliminate Protective's subrogation lien in its entirety because Plaintiff's injuries were not adequately compensated by his settlement with Schneider. Plaintiff maintains that the $220,000 settlement with Schneider represented only about 50% of the value of his claims. In addition, Plaintiff contends that because Protective did not participate in Plaintiff's lawsuit against Schneider, and in fact, took the position that Plaintiff's back pain was caused, at least in part, by preexisting degenerative changes, the Court should eliminate the lien to prevent an inequitable windfall to Protective.

In response, Protective requests that the Court enforce the entire amount of its lien, namely $69,335.00. Protective takes issue with Plaintiff's characterization of Protective as the bad actor in this case, pointing out that Protective paid all of Plaintiff's medical bills up to his back surgery, and continues to pay two-thirds of Plaintiff's weekly wage with Epes. Protective contends that its decision not to authorize Plaintiff's surgery was based in part on the belief that the surgery would not improve Plaintiff's symptoms, which, in fact, it did not.

-4-

Section 97-10.2(j) grants this Court[6] the authority to determine the amount of the workers' compensation carrier's subrogation lien on funds obtained by an injured employee from a third-party tortfeasor in two circumstances: (1) when Plaintiff obtains a judgment against the third party; or (2) when Plaintiff settles his case with the third party. N.C. Gen. Stat. § 97-10.2(j)(2004). Here, Plaintiff has settled this action with the third-party tortfeasor, Schneider, and thus section 97-10.2(j) applies and vests this Court with the authority to determine the amount, if any, of Protective's lien that should be enforced.

Although there is no mathematical formula or list of factors a court must consider when making the lien amount determination, *see In re Biddix*, 138 N.C. App. 500, 504, 530 S.E.2d 70, 72 (2000), the statute provides some guidance:

> After notice to the employer and insurance carrier, after an opportunity to be heard by all interested parties, and with or without the consent of the employer, the judge shall determine, in his discretion, the amount, if any, of the employer's lien, whether based on accrued or prospective workers' compensation benefits, and the amount of cost of the third-party litigation to be shared between the employee and employer. The judge shall consider the anticipated amount of prospective compensation the employer or workers' compensation carrier is likely to pay to the employee in the future, the net recovery to plaintiff, the likelihood of the plaintiff prevailing at trial or on appeal, the need for finality in the litigation, and any other factors the court deems just and reasonable, in determining the appropriate amount of the employer's lien.

---

[6] Section 97-10.2(j) expressly provides that "[i]f the matter is pending in the federal district court such determination may be made by a federal district court judge of that division." N.C. Gen. Stat. § 97-10.2(j)(2004).

-5-

N.C. Gen. Stat. § 97-10.2(j)(2004). The discretion granted under section 97-10.2(j) is not unlimited; "the trial court is to make a reasoned choice, a judicial value judgment, which is factually supported . . . [by] findings of fact and conclusions of law sufficient to provide for meaningful appellate review." *Allen v. Rupard*, 100 N.C. App. 490, 495, 397 S.E.2d 330, 333 (1990).

In this case, several factors convince the Court to substantially reduce, but not entirely eliminate, Protective's lien. First, the Court looks to the probable net recovery of Plaintiff Whitley. The evidence before the Court shows that out of Plaintiff's $220,000 settlement with Schneider, $73,333.33 will be deducted to pay Plaintiff's attorneys' fees, and $1,413.90 will be deducted to pay Plaintiff's attorneys' costs of litigation. (Whitley Aff. ¶ 29.) In addition, CIGNA has informed Plaintiff that it intends to assert a lien of $20,974.98 on the Schneider settlement to recoup the medical benefits it provided to Plaintiff. *Id.* ¶ 25. Furthermore, as of July 22, 2005, Protective's lien amounts to $69,335.00. *Id.* ¶ 26, Ex. B. Thus, if the Court were to enforce the entire amount of Protective's lien, Plaintiff's net recovery is likely to be only $54,942.79.

Second, the Court considers the amount of benefits Protective has paid, and will continue to pay, to Plaintiff. The record shows that as of July 22, 2005, Protective has paid a total of $69,335.00 in workers' compensation benefits to Plaintiff, with that amount increasing by $481.97 each week. *Id.* ¶¶ 25(2), 26, Ex. B. However, while Protective is currently paying Plaintiff two-thirds of his average weekly wage ($481.97 per week),

-6-

Protective has not filed an admission of liability with the Industrial Commission and could challenge Plaintiff's right to receive further payments at any time. *Id.* ¶ 27. Furthermore, the record shows that Protective would not authorize payment for Plaintiff's back surgery or his post-surgical pain management treatment. *Id.* ¶¶ 14, 26.

Third, the Court considers the extent of Plaintiff's injuries. The evidence before the Court tends to show that Plaintiff is totally disabled by his back condition and is limited in his ability sit or stand for prolonged periods. *Id.* ¶¶ 19, 25(2). Plaintiff testified at the hearing in this matter that his enjoyment of the normal activities of life has been greatly diminished on a permanent basis. Plaintiff currently receives Social Security Disability benefits in the amount of $617.00 per month, which would increase to $1,450.00 per month if Protective ceased making workers' compensation payments to Plaintiff. *Id.* ¶ 25(2).

After consideration of all of the above-listed factors, the Court concludes that Plaintiff's net recovery from Schneider will not adequately compensate him for his injuries in this case, and will in fact fall far short of that outcome. In order to ensure that Plaintiff is more adequately compensated by his settlement with Schneider, and in view of all the equities of this case recited above, the Court will reduce Protective's lien of $69,335.00 to 10% of its value, or $6,933.50. *See Wood v. Weldon*, 160 N.C. App. 697, 586 S.E.2d 801 (2003)(reduction of subrogation lien from $78,995 to $20,000 not abuse of discretion where settlement amount was inadequate to compensate plaintiff's losses); *Sherman v. Home Depot U.S.A., Inc.*, 160 N.C. App. 404, 588 S.E.2d 478 (2003)(same – reduction of lien from

-7-

Case 1:04-cv-01035-PTS    Document 11    Filed 08/22/05    Page 7 of 8

$168,000 to $55,667); *Tise v. Yates Constr. Co.*, No. COA01-500, 2002 WL 276212 (N.C. App. Feb. 5, 2002)(unpublished opinion)(same – elimination of $172,572 lien); *In re Biddix*, 138 N.C. App. 500, 530 S.E.2d 70 (2000)(same – elimination of $18,718 subrogation lien); *United States Fidelity & Guar. Co. v. Johnson*, 128 N.C. App. 520, 495 S.E.2d 388 (1998)(same – elimination of $47,046 lien).

## Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff Whitley pay to Protective Insurance Company the amount of $6,933.50 in full satisfaction of its subrogation lien.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date:  August 22, 2005